```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SIMPLEXGRINNELL, LP,

                        Plaintiff,           REPORT AND
                                             RECOMMENDATION
        -against-                            CV 11-5192  (JS) (GRB)

ROBERT MCCANN,

                        Defendant.
----------------------------------------------------------X
```

**GARY R. BROWN, United States Magistrate Judge:**

Before the undersigned is a motion for default judgment by SimplexGrinnell, LP, ("plaintiff"), which has been referred to the undersigned by District Judge Joanna Seybert to issue a report and recommendation whether a default judgment should be entered and for a determination of damages. Docket Entry ("DE") [7]. For the reasons set forth herein, it is respectfully recommended that plaintiff's motion for default judgment be GRANTED and that $112,227.42 be awarded in damages, plus post-judgment interest at the statutory rate pursuant to 28 U.S.C. § 1961 and $512.78 in costs.

## BACKGROUND

On October 25, 2011, plaintiff filed a complaint against Robert McCann ("defendant"), invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332, and asserting state law claims seeking damages for conversion, breach of contract, breach of fiduciary duty, misappropriation of trade secrets and confidential information. Complaint ("Compl.") ¶¶ 41 – 66, DE [1]. As relevant herein, the Complaint alleges as follows: Plaintiff, a limited partnership organized in the state of Delaware, with its principal place of business in Florida, is a provider of fire safety products and services. *Id.* ¶¶ 1, 5-8. In November 1997, plaintiff hired defendant, and in September 2010 promoted him to

1

acting District Manager for the Long Island District, which placed him in a position of trust and put him in direct contact with plaintiff's clients. *Id.* ¶¶ 10-12. Defendant signed a confidentiality agreement to ensure he would not reveal any technical or general trade secrets as well as a non-competition agreement, which prohibited him from soliciting plaintiff's clients for two years following his termination. *Id.* ¶¶ 13-15.

In April 2011, a forensic audit was conducted at plaintiff's Long Island district office, which ultimately revealed defendant's abuse of procurement cards, company-issued credit cards, as well as his fraudulent billing through a subcontractor that allowed defendant to receive kickbacks. *Id.* ¶¶ 22-23. The complaint alleges that defendant used his subordinates procurement cards to get money orders from a supermarket, where his wife worked, which paid for a soccer club that his daughter was involved in as well as an automobile service; in total defendant was able to embezzle $3,220 through these procurement cards. *Id.* ¶¶ 24-29.

In addition, defendant allegedly entered into an agreement with a subcontractor which used temporary employees, two of which were defendant's inexperienced friends, to do unnecessary and untraceable work which invoiced plaintiff over $109,000, some of which was kept by defendant. *Id.* ¶¶ 30-32. Up until November, 15, 2011, BJL Electric Corp. ("BJL") would invoice plaintiff for the alleged work and then BJL would transmit the money in cash to defendant, which he was supposed to use to pay to the three temporary employees. Default Motion ("Def. Mot."), Ex. B, Affidavit of Joseph Picarello ("Picarello Aff.") at ¶¶ 11-12, DE [6]. As of November 21, 2011, the temporary employees were paid through Outsource, Inc., a temp agency, yet defendant continued to submit invoices for work allegedly performed by these temporary

employees. *Id.* at ¶¶ 15-17.

On October 27, 2011, defendant was served with a copy of the Complaint, but failed to answer or otherwise move. DE [3]. On November 29, 2011, plaintiff moved for entry of default judgment, and on November 30, 2011, the Court clerk noted the default. DE's [4], [15]. On January 17, 2012, plaintiff moved for a default judgment and damages against defendant, and on January 24, 2012, Judge Seybert referred the motion to the undersigned for a recommendation. DE [6]; E-Order 1/24/2012.

## DISCUSSION

**I. Default Judgment**

Federal Rule of Civil Procedure 55 ("Rule 55") establishes a two-step process for obtaining a judgment against the defaulting party. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the Clerk of the Court, upon notification from the party seeking affirmative relief, enters default against the party that has failed to plead or otherwise defend in the action. Fed. R. Civ. P. 55(a); *Priestley*, 647 F.3d at 504-05. Second, the plaintiff must seek a judgment under Rule 55(b), following one of two procedures. The plaintiff may request that the Clerk of the Court enter judgment if the plaintiff's claim is for a sum certain (or a sum that can be made certain by computation), the defendant has failed to appear, and the defendant is neither a minor nor an incompetent. Fed. R. Civ. P. 55(b)(1); *Priestley*, 647 F.3d at 505. In all other cases, the party seeking a judgment by default must apply to the court pursuant to Rule 55(b)(2). *Priestley*, 647 F.3d at 505.

Plaintiff now applies to the Court pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure for an entry of default in its favor. Plaintiff has satisfied the

procedural prerequisites to a default judgment. After defendant failed to appear in this action, plaintiff sought notation of the defendant's default, which the Court clerk so entered. *See* DE [5]. Plaintiff then moved the Court for default judgment. *See* Def. Mot, DE [6].

**II. Liability**

As jurisdiction in this matter is based on diversity, the court applies New York substantive law in assessing plaintiff's claims. *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427 (1996). On this motion, plaintiff seeks only damages arising from and associated with its claims for conversion.

Plaintiff sets forth sufficient facts to establish its conversion claim. Under New York law, conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Loop Production v. Capital Connections LLC* quoting *Dover v. Assemi,* No. 08–cv–1337, 2009 WL 2870645, at *5 n. 15 (S.D.N.Y. Aug. 5, 2009). Defendant exercised right of ownership over three pieces of plaintiff's property: (1) the Panel Key, (2) the procurement cards of defendant's subordinates, and (3) the money that defendant embezzled in his fraudulent kickback scheme. All three of these goods belonged to plaintiff. Defendant's exercise of ownership over these goods deprived plaintiff of its rights to use them. For example, plaintiff cannot find nor utilize their Panel Key, nor can they get back the money defendant took and spent from the procurement cards or the money he embezzled through the kickbacks. *Id.* ¶¶ 42-45. Accordingly, the Court finds that plaintiff has stated a cause of action for the three conversion claims.

### III. Damages, Interests, and Costs

### A. Damages

While all factual allegations contained in the complaint are deemed true in an inquest, the same is not true for the allegations of damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (*citing Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). The court must determine that there is a legitimate basis for damages; in doing so a hearing can be held or the court can choose to rely on documentary evidence, such as affidavits and business records. Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1991). All reasonable inferences from the evidence should be drawn in favor of the moving party. *Au Bon Pain*, 653 F.2d at 65. However, even if a cause of action is stated, the plaintiff must prove the damages to a 'reasonable certainty.' *Liberty Mut. Ins. Co. v. Luxury Transp. Management Inc.,* No. 07 CV 0608, 2009 WL 1033177, at *6 (E.D.N.Y. April 16, 2009); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). The documentary evidence provided by plaintiff supports the $112,227.42 sought.

The details of defendant's embezzlement stem from two separate schemes (1) that defendant embezzled company funds through the fraudulent use of company procurement cards resulting in $3,220 in embezzled funds, and (2) that defendant participated in a kickback and/or fraudulent billing scheme resulting in $109, 017.42 in embezzled funds. The documentary evidence provided by plaintiff supports the $112,227.42 sought.

Plaintiff has already established defendant's liability. As evidence for the damages sought, the Complaint provides that:

> McCann also entered into an arrangement with a subcontractor for the retention of temporary employees to be paid in cash through which McCann obtained money for his personal benefit through the receipt of kickbacks and/or by engaging in fraudulent billing practices.
>
> Two of the three temporary employees McCann hired were his personal friends with no relevant experience.
>
> At McCann's direction, the subcontractor invoiced SimplexGrinnell for work that was unnecessary and/or not performed by the temporary employees which resulted in the subcontractor invoicing SimplexGrinnell in excess of $110,000, some portion of which was improperly retained by McCann.

Compl. ¶¶ 30-32.

Additionally, as evidence for the damages sought, plaintiff provided the affidavit of Joseph Picarello ("Picarello"), who conducted the forensic audit of SimplexGrinnell and uncovered the alleged wrongdoing. Def. Mot., Ex. B Affidavit of Joseph Picarello "(Picarello Aff."). Picarello attached copies of the money orders that defendant obtained through his unauthorized use of the plaintiff's procurement cards and used to pay personal expenses totaling approximately $3,220, none of which were for plaintiff's business purposes. *Id.* ¶¶ 24-27; Ex. 1-6.

As to the kickback scheme, plaintiff supplied sufficient evidence demonstrating the invoicing of in excess of $109,000 through BJL, which cannot be traced to any legitimate work performed by plaintiff. Defendant's duties included verifying invoices prepared by BJL and it is evident based on the documents provided that the money was not used to further plaintiff's business interests and was likely retained, in whole or in part, by defendant for his own benefit. Defendant's wrongdoing has been uncovered through the financial audit

6

and plaintiff has been denied discovery due to defendant's default. In light of the established facts and that defendant has not opposed the motion for default, nor supplied opposition for the amount of damages requested, the Court finds that plaintiff has plead and proven damages to a reasonable certainty. Accordingly, the Court recommends that plaintiff be awarded $112,227.42 in damages.

### B. Interest

Post-judgment interest is permitted on money judgments from civil cases that are tried in federal district courts. 28 U.S.C. § 1961(a). Such a post-judgment award is mandatory. *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (citation omitted). Accordingly, the Court recommends an award of such interest at the statutory rate prescribed by 28 U.S.C. § 1961(a).

### C. Costs

Plaintiff requests costs in this action totaling $512.78, representing the $350.00 Court filing fee and the $162.78 fee for the process server. *See* Def. Mot, Affidavit of Russell E. Adler at ¶ 6; Ex. C. In light of plaintiff's documentation in the form of invoices and receipts, the Court finds these costs reasonable and appropriate and recommends that plaintiff be reimbursed the $512.78 in costs.

### CONCLUSION

For the reasons set forth herein, it is respectfully recommended that plaintiff's motion for default judgment be GRANTED, plaintiff be awarded the sum of $112,227.42 in damages, plus post-judgment interest at the statutory rate pursuant to 28 U.S.C. § 1961 and $512.78 in costs.

## OBJECTIONS

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.**  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga County,* 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
       August 31, 2012

                                                    /s/ Gary R. Brown
                                                   GARY R. BROWN
                                                   United States Magistrate Judge